UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

DONALD F. HARKER, III,

     Plaintiff,                          Case No. 3:21-cv-22

vs.

ERIC WEBB,                         District Judge Michael J. Newman

     Defendant.

---

DONALD F. HARKER, III,

     Plaintiff,                          Case No. 3:21-cv-23

vs.

CHRISTOPHER F. CUMMINGS,     District Judge Michael J. Newman

     Defendant.

---

**ORDER: (1) DENYING WITHOUT PREJUDICE DEFENDANTS' MOTIONS TO WITHDRAW THE REFERENCE TO THE BANKRUPTCY COURT AND (2) INSTRUCTING THE BANKRUPTCY COURT TO CONDUCT ALL REMAINING PRETRIAL MATTERS**

---

This case is before the Court on Defendants Eric Webb's and Christopher F. Cummings's motions to withdraw the reference of the preferential transfer, 28 U.S.C. § 157, and fraudulent conveyance, 28 U.S.C. § 158, claims filed against them from the U.S. Bankruptcy Court for the Southern District of Ohio. *Harker v. Webb* ("*Webb*"), No. 3:21-cv-22, Doc. No. 2; *Harker v. Cummings* ("*Cummings*"), No. 3:21-cv-23, Doc. No. 2. The motions were fully briefed before the Bankruptcy Court and are now ripe for review.

Defendants' (particularly Webb's) case strikes at the heart of the constitutional limits that Article III of the U.S. Constitution places on Congress's power to delegate administration of the bankruptcy laws to the bankruptcy courts. *See* U.S. Const. art. III, § 1, cl. 1 ("The judicial power of the United States, shall be vested in one supreme court, and in such inferior courts as the Congress may from time to time ordain and establish"). In *Stern v. Marshall*, the Supreme Court held that a bankruptcy court unconstitutionally exercised the "judicial power of the United States" by entering final judgment on a counterclaim arising under state law. 564 U.S. 462, 487 (2011). But, since *Stern*, the Supreme Court has clarified that a bankruptcy proceeding need not immediately be transported to the district court the moment uncertainty arises over whether a bankruptcy court can finally adjudicate certain claims. *See Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 38 (2014).

In this case, there remains significant pretrial work outstanding that no party questions the Bankruptcy Court is constitutionally permitted to oversee. 28 U.S.C. § 157. The Court does not doubt the claims in this case present legitimate constitutional questions, but it equally finds no reason why those concerns cannot be addressed in the ordinary course. 28 U.S.C. § 157(c)(1). Consequently, Defendants' motions to withdraw are premature, and these cases will be returned to the Bankruptcy Court.

## I.

Debtor GYPC, Inc. filed a voluntary petition for Chapter 11 bankruptcy on March 30, 2017. *Webb*, Doc. No. 3 at PageID 20. The matter was converted to a Chapter 7 case on August 16, 2017. *Id.* Debtor's bankruptcy counsel filed, and the Bankruptcy Court granted, an application to retain Special Counsel. *Id.*

The Special Counsel filed adversary proceedings for preferential transfer and fraudulent conveyance against Webb and Cummings. *Webb*, Doc. No. 2 at PageID 9. Webb and Cummings

are Debtor's only two shareholders. *Webb*, Doc. No. 3 at PageID 20. In short, the Special Counsel alleges Webb and Cummings used their insider status to transfer corporate funds to themselves within the one-year look back period. *Harker v. Cummings*, 3:19-ap-3046, Doc. No. 53; *Harker v. Webb*, 3:19-ap-3047, Doc. No. 54. The Special Counsel petitioned the Bankruptcy Court to avoid the transfers and order Webb and Cummings to repay the funds to the estate. *Id.*[1] Both adversary proceedings arise out of the same set of operative facts, and the only procedural difference is that Cummings filed a proof of claim with the Bankruptcy Court, while Webb has not. *Webb*, Doc. No. 2 at PageID 9; *Cummings*, Doc. No. 2 at PageID 9.[2]

Both Defendants moved to dismiss the Trustee's claims. *Id.* But the Bankruptcy Court denied their motions and granted the Trustee leave to file an amended complaint. *Id.* Defendants renewed their motions to dismiss, and this time the Bankruptcy Court granted and denied in part their motions. *Id.* Both Defendants answered and asserted their right to a jury trial. *Id.* They now request this Court to withdraw their adversary proceedings from the Bankruptcy Court. *Webb*, Doc. No. 2; *Cummings*, Doc. No. 2.

## II.

Bankruptcy jurisdiction only exists by congressional grant of subject-matter jurisdiction. *See* 28 U.S.C. §§ 1334(a), (b), and (e). Jurisdiction over bankruptcy cases under Title 11 of the Bankruptcy Code is vested exclusively in the district courts. 28 U.S.C. § 1334(a). But, through the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("1984 Act"), Congress established a division of labor between the district courts and the bankruptcy courts. *See Exec.*

---

[1] Once the matter was converted to a Chapter 7 proceeding, the Bankruptcy Court appointed Donald F. Harker, III as Trustee. *Webb*, Doc. No. 2 at PageID 9. The Trustee later moved to substitute as Plaintiff in the adversary cases. *Id.* The Court will refer to Trustee as the Plaintiff in the above-captioned matters for ease of reference.

[2] Cummings has moved to withdraw his proof of claim in the Bankruptcy Court, which, if granted, would place Cummings on the same procedural footing as Webb. *Cummings*, Doc. No. 2 at PageID 10.

*Benefits*, 573 U.S. at 33 ("The 1984 Act largely restored the bifurcated jurisdictional scheme that existed prior to the [Bankruptcy Act of 1978]. The 1984 Act implements that bifurcated scheme by dividing all matters that may be referred to the bankruptcy court into two categories: 'core' and 'non-core' proceedings").

To that end, Congress created 28 U.S.C. § 157. Section 157 is not a jurisdictional provision; rather, it defines what are and are not core claims. *See In re Leslie Fay Cos., Inc.*, 212 B.R. 747, 773 (Bankr. S.D.N.Y. 1997) (citation omitted) ("The classification of a proceeding as core or non-core does not determine the jurisdiction of a bankruptcy court, but instead relates to a determination of whether the court may enter a final order or judgment or whether it may only issue findings of fact and conclusions of law upon which the district court enters a final order upon *de novo* review"). Bankruptcy courts are entrusted with answering the core, non-core question in the first instance. 28 U.S.C. § 157(b)(3) ("The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11"). If the claim is core, the bankruptcy court is empowered to adjudicate and enter final judgment on the claims. 28 U.S.C. § 157(b)(1); *see Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 670 (2015). If a claim is non-core but "otherwise related to a case under title 11," the bankruptcy court may still preside over the claim and do everything but enter final judgment and conduct a jury trial absent the parties' consent. 28 U.S.C. § 157(c)(1), (e); *see Stern*, 564 U.S. at 475 (explaining the divergent procedural path following the bankruptcy court's core, non-core analysis). Bankruptcy courts that handle non-core claims -- like a United States Magistrate Judge -- "shall submit proposed findings of fact and conclusions of law to the district court" for the district court to review *de novo*. 28 U.S.C. § 157(c)(1).

District courts retain discretion to "withdraw, in whole or in part, any case or proceeding referred" to bankruptcy courts "for cause shown." 28 U.S.C. § 157(d). The Bankruptcy Code does not define "cause," so courts evaluate the following factors to determine whether withdrawal is appropriate: "(1) whether the right to a jury trial exists; (2) whether the matter is core or non-core; (3) promoting judicial economy; (4) promoting uniformity in bankruptcy administration; (5) reducing forum shopping and confusion; (6) conserving the creditor's and debtor's resources; and (7) expediting the bankruptcy process." *Sergent v. McKinstry*, 472 B.R. 387, 404 (E.D. Ky. 2012); *see also In re Oasis Corp.*, No. 2:08-cv-288, 2008 WL 2473496, at *1 (S.D. Ohio June 18, 2008). "Permissive withdrawal of reference 'is not intended to be an "escape hatch" from bankruptcy court into district court,' therefore, 'courts prefer to grant such relief only in a limited class of proceedings.'" *In re Rivas*, No. 1:09-cv-176, 2009 WL 2929424, at *1 (E.D. Tenn. Sept. 8, 2009) (quoting *Holland v. LTV Steel Co., Inc.*, 288 B.R. 770, 772–73 (N.D. Ohio 2002)).

## III.

Webb argues that withdrawal of the adversary proceedings is not only appropriate but necessary because the Trustee presents so-called *Stern* claims, on which the Bankruptcy Court is constitutionally prohibited from entering final judgment. *Webb*, Doc. No. 2 at PageID 11.[3] Webb also seeks a jury trial on these claims. *Id.* at PageID 10. He asserts that without his consent -- which he does not intend to give -- the Seventh Amendment to the U.S. Constitution prohibits the Bankruptcy Court from presiding over a jury trial. *Id.*

---

[3] Cummings does not make the same argument because he filed a proof of claim against the Debtor in the Bankruptcy Court. *Cummings*, Doc. No. 2 at PageID 9. Cummings's proof of claim subjects him to the Bankruptcy Court's equitable power because the Trustee's adversary proceedings "become integral to the restructuring of the debtor-creditor relationship." *See Lagenkamp v. Culp*, 498 U.S. 42, 44 (1990). Nevertheless, he argues for withdrawal because the allegations in the adversary proceedings are nearly identical. *Cummings*, Doc. No. 2 at PageID 9. In that sense, Cummings makes a tagalong argument: wherever Webb goes, he should go. *Id.*

The Trustee contends that withdrawal -- even if warranted -- is premature. *Webb*, Doc. No. 3 at PageID 26. Bankruptcy courts, in the Trustee's view, are better equipped with specialized knowledge to handle matters just like this, and it would be inefficient to have a second judge get up to speed on the case when the matter has been handled ably by a bankruptcy judge for years. *Id.* Plus, the Trustee points out, even if the Bankruptcy Court was constitutionally barred from entering final judgment or conducting a jury trial on the adversary claims, § 157(c)(1) permits bankruptcy judges to preside over all pretrial matters. *Id.* at PageID 25–27. The Trustee sees no issue with the Bankruptcy Court either making a report and recommendation on summary judgment or preparing the claims for trial before handing the case off to the district court. *Id.*

The Court agrees with the Trustee that withdrawal is untimely. Webb is right as a doctrinal matter that the district court must enter final judgment or hold a jury trial on the adversary proceedings lodged against him. *See Waldman v. Stone*, 698 F.3d 910, 919 (6th Cir. 2012). But Webb presents no persuasive reason why the Bankruptcy Court cannot handle all pretrial matters in these cases up and until the point of issuing proposed findings of fact and conclusions or law or certifying that they are jury-trial-ready. *See Exec. Benefits*, 573 U.S. at 36. For that reason, Defendants' motions are denied, and the cases will be returned to the Bankruptcy Court.

## A.

In *Stern*, the Supreme Court explained that although § 157(b)(2) labels certain claims as core, not all core claims can be constitutionally adjudicated by the bankruptcy courts under § 157(b)(1). 564 U.S. at 499. *Stern* involved a creditor's proof of claim against the debtor's estate that alleged the debtor defamed the creditor. *Id.* at 470. The debtor responded with a counterclaim filed in the bankruptcy court for the creditor's tortious interference with a gift the debtor expected from her husband. *Id.* The bankruptcy court held that the debtor's counterclaim for tortious interference was a core proceeding because it was a "counterclaim[] by the estate against persons

filing claims against the estate" and entered final judgment. *Id.* at 470–71; *see* 28 U.S.C. § 157(b)(2)(C) (defining a "core proceeding" to include "counterclaims by the estate against persons filing claims against the estate").

But the Supreme Court reversed. *Stern*, 564 U.S. at 503. Though the debtor's counterclaim met the statutory definition of a core claim, a final judgment on the counterclaim could only be entered by an Article III court. *Id.* at 487. The Constitution prohibits non-Article III courts, like the bankruptcy courts, from "exercising the judicial power of the United States." U.S. Const. art. III § 1, cl. 1. Because the debtor's counterclaim involved "state law action independent of the federal bankruptcy law and not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy," the "Bankruptcy Court . . . exercised the 'judicial Power of the United States' in purporting to resolve and enter final judgment on a state common law claim." *Stern*, 564 U.S. at 487.

*Stern*'s holding was, in part, based on the distinction between public and private rights. As the Court explained, "there [is] a category of cases involving 'public rights' that Congress c[an] constitutionally assign to 'legislative' courts for resolution." *Stern*, 564 U.S. at 485 (quoting *N. Pipeline Constr. Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 67 (1982)). The "'public rights' exception extend[s] 'only to matters arising between' individuals and the Government 'in connection with the performance of the constitutional functions of the executive or legislative departments . . . that historically could have been determined exclusively by those' branches." *Id.* (quoting *N. Pipeline*, 458 U.S. at 67–68). A bankruptcy court, therefore, cannot "constitutionally be vested with jurisdiction" to decide a claim arising under state law "against an entity that was not otherwise part of the bankruptcy proceedings." *Id.* (quoting *N. Pipeline*, 458 U.S. at 87 n.40).

7

The public/private rights distinction was also teased out in *Granfinanciera, S.A. v. Norberg* where the debtor brought a fraudulent conveyance claim against a non-creditor. 492 U.S. 33 (1989). There, the Court reasoned, in *dicta*, that fraudulent conveyance claims were "quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res." *Id.* at 56.[4] Fraudulent conveyance claims against non-creditors, therefore, resemble private rights of action, rather than public ones. *Id.*

Likewise, *Stern* held that the bankruptcy court could not enter a final judgment on a counterclaim arising under state law and adjudicated outside the claims allowance process. *Stern*, 564 U.S. at 499. It was not enough that the counterclaim had "some" bearing on the bankruptcy. *Id.* Rather, "the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Id.*

Webb argues that *Stern* and *Granfinanciera* should guide this Court's analysis. *Webb*, Doc. No. 2 at PageID 13. The Trustee's fraudulent conveyance and preference claims, Webb contends, are just like those lodged in *Granfinanciera*. *Id.* Because Webb did not file a proof of claim, the adversary proceedings should be considered private rights of action under *Stern* and adjudicated by the district court. *Id.*

If only it were as simple as Webb makes it out to be. The scope of *Stern* and *Granfinanciera* has confounded courts in the Sixth Circuit and across the country.[5] Both opinions

---

[4] The issue squarely before the *Granfinanciera* Court "involved the limits of the bankruptcy court's equity jurisdiction for Seventh Amendment purposes, not the limits of the bankruptcy court's authority for purposes of Article III. But the Supreme Court stated that the analysis for each is the same." *Waldman*, 698 F.3d at 919.

[5] *See, e.g.*, *In re Paragon Offshore PLC*, 598 B.R. 761, 775 (Bankr. D. Del. 2019) (concluding that a fraudulent conveyance claim was not a *Stern* claim); *Emerson v. Treinish*, No. 1:13-mc-52, 2014 U.S. Dist. LEXIS 84237, at *5 (N.D. Ohio June 20, 2014) (describing courts as "badly splintered" in their application of *Stern* to claims arising, but not necessarily proper for adjudication, under the bankruptcy code);

purported to be narrow decisions.  *Stern*, 564 U.S. at 503; *Granfinanciera*, 492 U.S. at 64.  Neither case dealt with whether the bankruptcy courts can enter final judgment on fraudulent conveyance or preferential transfer claims.  *See, e.g.*, *In re Teleservices Grp., Inc.*, 456 B.R. at 323. Nevertheless, the trend in the Sixth Circuit has been to treat fraudulent conveyance and preferential transfer claims where a proof of claim has not been filed as *Stern* claims that can only be finally adjudicated by an Article III court.  *See, e.g.*, *Getzler Heinrich & Assocs., LLC v. Wojcik*, No. 1:14-mc-74, 2015 WL 235819, at *1 (N.D. Ohio Jan. 14, 2015); *In re DOTT Acquisition, LLC*, No. 12-12133, 2012 WL 3257882, at *4 (E.D. Mich. July 25, 2012); *In re Davis*, No. 05-15794, 2011 WL 5429095, at *12 (Bankr. W.D. Tenn. Oct. 5, 2011).  The Court will follow that well-plowed trail here.

       **1.**

       *Granfinanciera* was not an Article III case.  492 U.S. at 50 ("Nor need we decide whether, if Congress has authorized bankruptcy courts to hold jury trials in such actions, that authorization comports with Article III when non-Article III judges preside over the actions subject to review in, or withdrawal by, the district courts").  Instead, the Court addressed the limited question of whether non-bankruptcy claimants were entitled to a Seventh Amendment jury trial on fraudulent transfer claims filed against them.  *Id.* at 50, 64.  The Court relied on its Article III precedents as a lens by which to examine the Seventh Amendment question.  *Id.* at 53, 55–56.  Doing so placed into question the constitutionality of Congress's designation of certain claims as core under § 157.

---

*Kirschner v. Agoglia*, 476 B.R. 75, 81 (S.D.N.Y. 2012) ("Beyond all else, the Bankruptcy Court relied on the Supreme Court's *dictum* that the holding in Stern was 'limited' and 'narrow.' . . . [But] simple logic dictates unequivocally that fraudulent conveyance claims like those brought here are 'private rights' claims that, under *Stern* and the Constitution, must be finally decided by an Article III Court"); *In re Teleservices Grp., Inc.*, 456 B.R. 318, 323 (Bankr. W.D. Mich. 2011) (explaining that *Stern* raised as many new constitutional questions as it answered and predicting "uncertainty" as bankruptcy and district courts discern its teachings).

*Granfinanciera* applied the public-rights exception to determine if non-creditors were guaranteed a trial in the district courts. *Id.* at 50–51. The Seventh Amendment, the Court explained, preserved the right to a jury trial in "suits at common law." *Id.* at 51 (quoting *Atlas Roofing Co. v. Occupational Health & Safety Rev. Comm'n*, 430 U.S. 442, 455 (1977)). That limiting principle narrows the type of matters Congress can assign to non-Article III courts to cases "where the Government is involved in its sovereign capacity under an otherwise valid statute creating enforceable public rights." *Id.* (quoting *Atlas Roofing*, 430 U.S. at 458). In the Article III context, Congress may not delegate a "newly fashioned regulatory scheme" grounded in state law to non-Article III courts. *Id.* at 52. The same concept applies to the Seventh Amendment. *Id.* at 53. Indeed, the Court reasoned, "if a statutory cause of action is legal in nature," whether Congress can authorize a non-Article III court to conduct fact finding must be answered in the same way if Congress "assign[ed] adjudication of that cause of action to a non-Article III tribunal." *Id.* at 53.

Despite the sweeping appearance of this statement, *Granfinanciera* was careful to cabin its holding. *Id.* at 64. The Court explained it did not "express any view as to whether . . . Article III allows jury trials in [fraudulent conveyance] actions to be held before non-Article III bankruptcy judges subject to the oversight provided by the district courts pursuant to the 1984 Amendments. We leave [that] issue[ ] for future decisions." *Id.* Tempting as it may be to graft *Granfinanciera* onto the contemporary question -- whether Congress violated Article III by labeling fraudulent conveyance and preferential transfer actions as "core" claims in the bankruptcy statute -- it did not directly address the issue.

The same goes for *Stern*. In that case, the Court was explicit in its holding: "Congress, in one isolated respect, exceeded" Article III by authorizing bankruptcy courts to enter final judgment

on a debtor's counterclaims. *Stern*, 564 U.S. at 503. It is true that *Stern* discussed *Granfinanciera* at length. *Id.* at 492. But it did so to set a marker on where the Court's last word on the public-rights exception came from. *Id.* *Stern* did not, as some courts have held,[6] extend *Granfinanciera*'s reach. *Id.* at 503.[7]

While the Supreme Court has not gone as far as Webb suggests, the Sixth Circuit has. *Waldman* involved a common-law fraud claim lodged against a debtor's principal creditor. 698 F.3d at 914–16. The debtor sought money damages for the fraud perpetrated by the creditor, as well as disallowance of certain obligations to the creditor. *Id.* at 915. After finding the creditor committed an "egregious" fraud, the bankruptcy court awarded full relief to the debtor. *Id.* at 916. The bankruptcy court discharged the fraudulently induced debts and awarded the debtor compensatory and punitive damages on the fraud claim. *Id.* at 916. On appeal, the creditor argued that the bankruptcy court ran afoul of Article III by entering final judgment on both the disallowance and affirmative fraud claims. *Id.* at 918–20.

The Sixth Circuit divided the claims into two camps: the disallowance claims that involved a restructuring of debtor-creditor relations, and the fraud claim that augmented the bankruptcy estate outside the claims-allowance process. *Id.* at 919–21. This difference was dispositive. The

---

[6] *See, e.g.*, *In re Teleservices Grp., Inc.*, 456 B.R. at 323 (explaining, as a practical matter, that *Stern* is generally applicable to claims labeled as core but which cannot be constitutionally adjudicated as such).
[7] Justice Scalia's partial concurrence in *Stern* underscores the majority opinion's limited reach. 564 U.S. at 504 (Scalia, J. concurring). By his count, the majority gave "seven different reasons . . . for concluding that an Article III judge was required to adjudicate this lawsuit." *Id.* Those reasons, he added, "entered our jurisprudence almost randomly." *Id.* Considering the disposition of *Stern*, it was anything but clear that the Court relied on or extended *Granfinanciera*.

The Supreme Court has since cautioned against "[a]n expansive reading" of *Stern* that "would be inconsistent with the opinion's own description of its holding." *Wellness Int'l Network*, 575 U.S. at 682. In a case that dealt with whether *Stern* claims could be litigated by consent in the bankruptcy court, the majority emphasized that *Stern* was a case about a defendant forced to litigate a purely state-law claim in a non-Article III court. *Id.* *Stern* did not intend to "change all that much" about the division of labor between district and bankruptcy courts. *Id.* (quoting *Stern*, 564 U.S. at 502).

Sixth Circuit explained that *Stern* claims arise "when a debtor pleads an action [either] arising only under state law" or one that "would augment the bankrupt estate, but 'not necessarily be resolved in the claims allowance process,' then bankruptcy court is constitutionally prohibited from entering final judgment." *Id.* at 919 (quoting *Stern*, 564 U.S. at 499). Though neither *Stern* nor *Granfinanciera* directly dealt with whether a bankruptcy court could enter final judgment on a fraud claim, the Sixth Circuit held the principles outlined in those cases were readily transferrable. *Id.* ("*Granfinanciera* actually involved the limits of the bankruptcy court's equity jurisdiction for Seventh Amendment purposes, not the limits of the bankruptcy court's authority for purposes of Article III. But the Supreme Court stated that the analysis for each is the same").[8] It followed that the bankruptcy court was empowered to enter final judgment on the disallowance claims -- because those involved a discharge of debts owed to the creditor -- but violated Article III by awarding money damages on the fraud claim. *Id.* at 921–22.

**2.**

Since *Waldman*, courts in the Sixth Circuit have determined fraudulent conveyance and preferential transfer claims must be finally adjudicated by an Article III court absent the defendant's consent. *See, e.g.*, *Silagy v. Morris*, No. 5:13-cv-2645, 2015 WL 853499, at *1 (N.D. Ohio Feb. 26, 2015); *In re Fisher*, No. 10-63481, 2014 Bankr. LEXIS 5292, at *6–7 (Bankr. S.D. Ohio Dec. 22, 2014) ("In light of the foregoing, rather than entering final judgment on the fraudulent transfer claims, the Court ultimately will be required to issue proposed findings of fact and conclusions of law to the district court"); *In re GLC Ltd.*, No. 11-11090, 2012 Bankr. LEXIS

---

[8] One caveat is necessary: the fraud claims brought in *Waldman* were -- unlike the claims in this case -- non-core. 698 F.3d at 921. That made *Waldman* an easier case in the sense that § 157(c)(1) sets forth the procedure bankruptcy judges faced with non-core, but related, claims should follow. *Id.* at 922. Though the fraud allegation in *Waldman* was not a "*Stern*" claim, strictly speaking, the Sixth Circuit described *Stern* in sufficiently broad terms to compel its application to any claim labeled core by § 157.

5499, at *3–5 (Bankr. S.D. Ohio Nov. 26, 2012) (applying *Waldman* to a fraudulent transfer action). What both types of claims have in common is that they seek a money judgment to recoup an allegedly unlawful transfer of money before the bankruptcy case commenced. *See In re Teleservices Grp., Inc.*, 456 B.R. at 338 (applying *Stern* to fraudulent transfer claim because the trustee sought a money judgment). This is why *Granfinanciera* said fraudulent transfer claims "more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res." 492 U.S. at 56.[9]

The Trustee's allegations lodged against Webb[10] show that observation to be true in this case. *Harker v. Webb*, No. 3:19-ap-3047, Doc. No. 54. Webb allegedly initiated a series of transfers from Debtor to himself knowing the business was insolvent. *Id.* For that, the Trustee requests avoidance and repayment of the ill-gotten money. *Id.* The effect of a money judgment against Webb would be to increase the funds available to the bankrupt estate to satisfy Debtor's creditors. *See, e.g.*, *Sergent*, 472 B.R. at 400–02 (holding a bankruptcy court could not enter final judgment where state-law claims were based on proof beyond that necessary in the claims allowance process and sought money damages). Therefore, an Article III court must enter final

---

[9] This difference underscores the Due Process interests often at stake when examining if Congress violated Article III by delegating judicial power to non-Article III courts. In envisioning an independent judiciary, the Framers had in mind the "judicial abuses at the hand of the Crown" committed by judges subject to the will of the King. *Stern*, 564 U.S. at 483–84. A roster of judges with tenure and salary protection ensures that no individual "can be deprived of his liberty, or property . . . without the exercise of the judicial power of the United States." *Murray's Lessee*, 59 U.S. 272, 275–76 (1855). The promise of the Fifth Amendment's Due Process Clause would be broken "if the other branches of the Federal Government could confer the Government's 'judicial Power' on entities outside Article III." *Stern*, 564 U.S. at 484. This concern is diminished when the claim involves a public right, *see N. Pipeline*, 458 U.S. at 67–68, but is of paramount importance when a non-Article III court, like the bankruptcy courts, reallocates property based on a historically common-law cause of action, *see Stern*, 564 U.S. at 484.

[10] And only Webb because, as explained below, Cummings's proof of claim places him on different procedural footing. *See infra* § III(A)(3).

judgment on the fraudulent conveyance and preferential transfer claims made against Webb. *See Stern*, 564 U.S. at 492; *Waldman*, 698 F.3d at 919.

    **3.**

    Where does this leave Cummings? Cummings pushes for his case to be treated the same as Webb's. *Cummings*, Doc. No. 2 at PageID 9–10. Though the Trustee's claims against Cummings are identical to Webb, Cummings filed a proof of claim with the Bankruptcy Court staking his entitlement to the allegedly improperly transferred funds. *Id.* at PageID 9. This means his adversary proceeding must be placed in a different bucket than Webb's.

    A proof of claim functions as consent to a bankruptcy court's equitable jurisdiction. *See, e.g.*, *Lagenkamp*, 498 U.S. at 44 ("[B]y filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power"). With this comes submission to the bankruptcy court's final judgment. *See, e.g.*, *Stern*, 564 U.S. at 482 (observing that the bankruptcy court could have adjudicated the counterclaim per § 157(b)(2)(C) had the defendant consented). In *Wellness International Network*, the Supreme Court held that bankruptcy courts could constitutionally adjudicate *Stern* claims when the parties so consent. 575 U.S. at 679. One "who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide by the consequences of that procedure." *Stern*, 564 U.S. at 496 (quoting *Katchen v. Landy*, 382 U.S. 323, 333 n.9 (1966)).

    Cummings threw his hat into the claims allowance ring when he filed a proof of claim. *See, e.g.*, *In re Teleservices Grp., Inc.*, 456 B.R. at 336. With that comes acquiescence to the Bankruptcy Court's final judgment on the fraudulent conveyance and preferential transfer claims filed against him. *See In re Global Technovations, Inc.*, 694 F.3d 705, 722 (6th Cir. 2012) (explaining that the bankruptcy court had jurisdiction to enter a judgment on a fraudulent transfer

claim because the creditor filed a proof of claim).  Should Cummings maintain his proof of claim, the Bankruptcy Court's judgment will be binding.

### 4.

Webb might be right about his claims in principle, but remand to the Bankruptcy Court is still the better course of action.  The Supreme Court in *Executive Benefits* defined the procedural steps a bankruptcy court should take when faced with a *Stern* claim.  573 U.S. at 36–37.  There, the trustee filed a fraudulent conveyance claim against the debtor's alleged corporate successor.  *Id.* at 29.  Neither party contested that the trustee presented a *Stern* claim; instead, the question was whether the Ninth Circuit erred in holding that the bankruptcy court's adjudication of the fraudulent conveyance claims could be treated as proposed findings of fact and conclusions of law subject to *de novo* review in the district court.  *Id.* at 30, 35.  On appeal, the corporate successor argued that *Stern* created a statutory gap in the bankruptcy statute because § 157 does not explicitly permit bankruptcy courts to issue proposed findings of fact and conclusions of law in *core* cases.  *Id.* at 35–36.  The corporate successor's preferred outcome was for all *Stern* claims to be litigated in the district court in the first instance.  *Id.* at 36.

The Supreme Court disagreed.  The 1984 Act contains a severability clause that provides, "[i]f any provision of this Act or the application thereof to any person or circumstance is held invalid, the remainder of this Act, or the application of that provision to persons or circumstances other than those as to which it is held invalid, is not affected thereby."  *Id.  Stern* invalidated the part of § 157(b) permitting bankruptcy courts to adjudicate core claims where the creditor did not file a proof of claim.  *Stern*, 564 U.S. at 499.  But the *Executive Benefits* Court explained that *Stern* did not vitiate the remainder of § 157.  573 U.S. at 36–37.  Section 157(c)(1) is still "fully operative as a law" and there is nothing stopping the bankruptcy court from treating *Stern* claims as non-core claims and issuing reviewable findings of fact and conclusions of law to the district court.  *Id.*

(quoting *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 509 (2010)). Because the fraudulent conveyance "claims fit comfortably within the category of claims governed by § 157(c)(1), the Bankruptcy Court would have been permitted to follow the procedures required by that provision, *i.e.*, to submit proposed findings of fact and conclusions of law to the District Court to be reviewed *de novo*." *Id.* at 38.

Remand of Webb's claims to the Bankruptcy Court will not frustrate their review by an Article III court. Following *Executive Benefits*'s path ensures an orderly division of labor between the district and bankruptcy courts, which was Congress's intention all along by enacting § 157. *Exec. Benefits*, 573 U.S. at 38; *Northstar Disposal Servs. VI, LLC v. Degirolamo*, No. 4:16-mc-0056, 2016 WL 6275125, at *2 (N.D. Ohio Oct. 27, 2016) (finding that withdrawal of a fraudulent conveyance claim is "premature" under *Executive Benefits* before the bankruptcy court submits findings of fact and conclusions of law to the district court for *de novo* review). Webb will have his day in district court should the adversary proceedings warrant summary judgment review or trial. *See Emerson*, 2014 WL 2807481, at *3 (explaining that if the bankruptcy court determines a fraudulent conveyance claim against a non-creditor is a *Stern* claim, "neither *Stern* nor [*Executive Benefits*] deprives the bankruptcy court of authority to handle pre-trial supervision of this case, should the Court deem it appropriate"). But today he presents no persuasive reason why that review cannot occur in the ordinary course.

## B.

Bankruptcy courts lack the power to hold jury trials absent the parties' consent. 28 U.S.C. § 157(e) ("If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties"). The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy

shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. Individuals are guaranteed the right to a jury trial in an Article III court when traditionally legal rights are at stake. *See Granfinanciera*, 492 U.S. at 41. But Congress does have leeway to entrust resolution of purely equitable claims in non-Article III courts like the bankruptcy courts. *Lagenkamp*, 498 U.S. at 44.

*Granfinanciera* laid out a two-part test to determine whether an action involves legal or equitable rights. 492 U.S. at 42; *see also Sergent*, 472 B.R. at 405. "First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." *Granfinanciera*, 492 U.S. at 42. The second question is "more important" than the first." *Id.*

Step one of the *Granfinanciera* test is identical to the key inquiry under *Stern*. *Sergent*, 472 B.R. at 405. Fraudulent conveyance and preferential transfer claims were commonly brought at law to recover money damages. *Granfinanciera*, 492 U.S. at 43. Factor one therefore supports Webb and Cummings's right to a jury trial.

Step two requires the Court to examine the nature of the remedy sought by the Trustee. "[M]oney is the 'traditional form of relief offered in the courts of law,' but it is not always a legal remedy." *Sergent*, 472 B.R. at 406 (quoting *Chauffers, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 570 (1990)). "A monetary remedy is equitable only when it is a form of equitable restitution or it is 'incidental to or intertwined with injunctive relief.'" *Id.* The Trustee here does not request an injunction, so the question becomes whether it seeks equitable restitution from Webb. *Id.*

The Court finds it does not because the Trustee's preferred relief does not display characteristics consistent with actions for restitution brought in the courts of equity. *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002). The Trustee's amended complaint does not trace the transferred funds back to particular property in Webb's possession or request a constructive trust. *See id.* ("[A] plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession"). It instead seeks repayment of presumably dissipated funds to the estate akin to "a judgment imposing a merely personal liability upon the defendant to pay a sum of money." *Id.*; *see also Leary v. Daeschner*, 349 F.3d 888, 910 (6th Cir. 2003) (quoting *Hildebrand v. Bd. of Tr. of Mich. State Univ.*, 607 F.2d 705, 708 (6th Cir. 1979)) ("[I]f the relief sought includes compensatory and/or punitive damages, then there does exist a right to trial by jury"). The Trustee's fraudulent conveyance and preferential transfer claims appear more like a request for legal relief and, therefore, necessitate a jury trial. *See, e.g.*, *Lagenkamp*, 498 U.S. at 45 ("[T]he trustee can recover allegedly preferential transfers only by filing what amounts to a legal action to recover a monetary transfer. In those circumstances the preference defendant is entitled to a jury trial"); *Granfinanciera*, 492 U.S. at 56.

Though Webb may receive the full benefit of the Seventh Amendment's protections, Cummings once again finds himself on a different procedural path. Cummings's proof of claim functions as consent to the Bankruptcy Court's equitable jurisdiction. *See In re Global Technovations Inc.*, 694 F.3d at 722 (describing a proof of claim as "voluntar[y]" submission to the bankruptcy court). Proofs of claim are adjudicated in the claims allowance process and become "integral to the restructuring of the debtor-creditor relationship." *Lagenkamp*, 498 U.S. at 44. This

equitable process is the apex of the bankruptcy court's constitutional authority. *See Katchen*, 382 U.S. at 327 ("[Bankruptcy] courts are essentially courts of equity . . . . [T]hey characteristically proceed in summary fashion to deal with the assets of the bankrupt they are administering. . . . This is elementary bankruptcy law") (citations omitted). Cummings relinquished his right to a jury trial by engaging in the claims allowance process because resolution of his proof of claim requires a determination on the Trustee's adversary proceedings. *See In re Gomoll*, 580 B.R. 875, 877–78 (Bankr. N.D. Ohio 2015). The Bankruptcy Court, therefore, may engage in fact-finding related to the Trustee's adversary claims against Cummings.

Webb contends that his right to a jury trial justifies the immediate withdrawal of this adversary proceedings. *Webb*, Doc. No. 2 at PageID 15. It is true that "cause to withdraw the reference 'automatically exists' without regard to the remaining factors . . . [w]hen a party is entitled to a jury trial." *Sergent*, 472 B.R. at 420 (quoting *In re Oasis Corp.*, 2008 WL 2473496, at *2). Timing of the withdrawal, though, is equally -- if not more -- important than cause to withdraw. Here, because several pretrial matters remain outstanding, it is premature to elevate the adversary proceedings to the district court. *Northstar Disposal Servs. VI*, 2016 WL 6275125, at *3 ("Assuming that the proceeding is a *Stern* claim and Defendant has the right to a jury trial on the claims asserted against it in the Adversary Complaints, the withdrawal is still inappropriate because the litigation of the Adversary Proceedings is in its early stages and is not 'trial-ready'") (quoting *In re Enron Corp.*, 318 B.R. 273, 275 (S.D.N.Y. 2004)).

Webb and Cummings were named third-party defendants in two other adversary proceedings pending before the Bankruptcy Court. *Webb*, Doc. No. 3 at PageID 21. The Trustee alleges that Webb and Cummings acted on behalf of Debtor in negotiating an asset purchase agreement ("APA") with another company. *Id.* The terms of the APA required Webb and

Cummings to indemnify the acquiring company, and the Trustee claims they received fraudulent or preferential transfers from Debtor through the APA. *Id.* The other adversary proceeding involves payments due on the APA to another company. *Id.* at PageID 21–22. The bankruptcy judge set a coordinated discovery schedule for all of the adversary proceedings. *Id.* at PageID 22. Also pending before the Bankruptcy Court are Webb's and Cummings's partial motions for judgment on the Trustee's adversary proceeding pleadings. *Id.* In short, these cases are nowhere near ready for trial.

It may be appropriate for the district court to hold a jury trial on the claims against Webb at some point in the future. *See, e.g.*, *Bavelis v. Doukas*, 835 F. App'x 798, 805 (6th Cir. 2020). But the Court finds no reason why -- especially considering *Executive Benefits* -- the Bankruptcy Court cannot employ its familiarity with these cases to oversee the remaining pretrial matters. *See Sergent*, 472 B.R. at 420 (acknowledging that while the plaintiff was entitled to a jury trial in district court, denial of the withdrawal motion was proper to allow the bankruptcy court to conclude pretrial matters); *see also Official Comm. of Unsecured Creditors v. Fleet*, No. 6:15-cv-6484, 2015 WL 7776600, at *4 (W.D.N.Y. Dec. 2, 2015) (denying withdrawal motion as premature in part because "the legal claims in the Adversary Proceeding eventually may resolve without the necessity of a jury trial"). If the Bankruptcy Court certifies that the claims are trial-ready, Webb and Cummings can renew their withdrawal motions for the Court's reconsideration. *Sergent*, 472 B.R. at 421.

## IV.

For the reasons given, the Court **DENIES WITHOUT PREJUDICE** Webb's and Cummings's motions to withdraw (*Webb*, Doc. No. 2; *Cummings*, Doc. No. 2) and **ORDERS** these matters be returned to the Bankruptcy Court. The Bankruptcy Court shall **CONDUCT** all remaining pretrial matters.

**IT IS SO ORDERED.**

Date:   September 9, 2021          s/Michael J. Newman
                                   Hon. Michael J. Newman
                                   United States District Judge